2008 WI 78
Estate of Dale Otto, by Personal Representative Shelley Otto.
Shelley Otto, Ashley Otto and Amanda Otto, Plaintiffs-Respondents,
v.
Physicians Insurance Company of Wisconsin, Inc., Defendant-Appellant-Petitioner, Charles L. Folkestad, M.D., Terrance J. Witt, M.D., Red Cedar Clinic  Mayo Health System and Wisconsin Patients Compensation Fund, Defendants, Valley Health Plan, Inc. and Blue Cross & Blue Shield of Nebraska, Subrogated Defendants.
No. 2006AP1566.
Supreme Court of Wisconsin.
Opinion Filed: July 3, 2008.
Oral Argument: April 15, 2008.
For the defendant-appellant-petitioner there were briefs by Michael B. Van Sicklen, Bree Grossi Wilde, and Foley & Lardner LLP, Madison, and oral argument by Michael B. Van Sicklen.
For the plaintiffs-respondents there was a brief filed by John L. Cates, Michael J. Luebke, Eric J. Haag, Heath P. Straka, and Gingras, Cates & Luebke, S.C., Madison, and oral argument by Heath P. Straka.
An amicus curiae brief was filed by James A. Friedman, Katherine Stadler, and Godfrey & Kahn, S.C., Madison, on behalf of the Wisconsin Insurance Alliance and the Property Casualty Insurers Association of America.
An amicus curiae brief was filed by Linda V. Meagher and Habush Habush & Rottier, S.C., Waukesha, on behalf of the Wisconsin Association for Justice.
¶ 1 SHIRLEY S. ABRAHAMSON, C.J.
The defendant, Physicians Insurance Company of Wisconsin, Inc. (PIC), seeks review of a published decision of the court of appeals. For purposes of this review, the court of appeals affirmed a judgment by default rendered by the Circuit Court for Dunn County, Rod W. Smeltzer, Judge,[1] against PIC for damages suffered by plaintiffs Shelley Otto, Ashley Otto, Amanda Otto, and the Estate of Dale Otto (collectively, the plaintiff) as a result of the alleged medical malpractice of PIC's codefendant insureds. We affirm the decision of the court of appeals.
¶ 2 Our analysis is as follows:
I. We begin by stating what is not at issue in the present case.
II. We state the issue presented.
III. We explore the facts.
IV. We consider and reject each of PIC's arguments in turn.

I
¶ 3 Whether PIC is in default is not at issue. Although PIC vigorously disputed the issue of its default before the circuit court and court of appeals, PIC does not dispute here that it is in default.
¶ 4 PIC argued before the circuit court that although it had failed to serve an answer timely in response to the plaintiff's amended complaint naming PIC as a defendant, PIC should not be held in default under the circumstances of the present case. PIC moved for the circuit court to enlarge the time in which PIC could file and serve its answer, arguing that its neglecting to serve an answer within the time originally specified was excusable.[2]
¶ 5 PIC explained its failure to serve an answer timely as follows: PIC hired counsel to represent PIC and all of PIC's codefendants (most of whom were PIC's insureds) in the action; the counsel hired by PIC intended to serve an answer timely on behalf of all defendants in the action, including PIC; the counsel timely served an answer (which denied the liability of all defendants) on behalf of PIC's codefendants but inadvertently omitted PIC's name from the caption of the answer; counsel's inadvertent omission of PIC's name stemmed from a clerical or computer-based error without PIC's, counsel's, or counsel's staff's fault; the parties continued to litigate the action for more than nine months before anyone noticed PIC's failure to answer and for more than one year before the plaintiff moved for default judgment against PIC; the plaintiff and all other parties knew or believed all along that the counsel representing PIC's codefendants was also representing PIC; and the counsel hired by PIC immediately filed an amended answer including PIC's name in the caption when counsel's prior omission was finally called to his attention.
¶ 6 PIC argued to the circuit court that notwithstanding the oversight of its counsel, PIC had at all times diligently defended the action on its merits on behalf of itself and its codefendants. PIC contended that when counsel's oversight has caused no prejudice to the plaintiff, the interests of justice weigh heavily in favor of accepting PIC's answer. The plaintiff did not argue to the circuit court that it was prejudiced by PIC's failure to serve its answer timely.
¶ 7 PIC's argument to the circuit court was unsuccessful. The circuit court found as matters of fact that the counsel purportedly representing PIC had accepted service of the plaintiff's amended complaint on behalf of PIC's codefendants but had refused to accept service on PIC's behalf; that the plaintiff had been forced to serve its amended complaint to PIC personally; that there was no evidence in the record showing that PIC ever notified counsel that it had been served with the amended complaint or requested counsel to serve or file an answer on its behalf; that "[f]rom October 30, 2003 through August 24, 2004 (when PIC filed an Answer with the Court), [counsel for the codefendants] filed numerous formal documents with the Court, none listing PIC as being represented by his firm";[3] that "[h]earings were held on motions to strike the expert testimony of Dr. Melby [an expert witness called by the plaintiff] on April 20, 2004 and to strike certain testimony of Dr. Hogan [another expert witness called by the plaintiff] on July 13, 2004" and that "PIC did not appear with counsel at those hearings."[4]
¶ 8 On the basis of the facts as it found them, the circuit court determined that PIC's neglect was not excusable. The circuit court thus denied PIC's motion to enlarge the time in which to file and serve an answer and granted the plaintiff's motion to strike the answer that PIC had served untimely.
¶ 9 In the petition for review filed with this court, PIC declined to contest that it is in default for its failure to serve an answer timely. PIC concedes before this court that its failure to serve an answer timely cannot be excused under the circumstances of the present case; that the circuit court properly denied PIC's motion to enlarge the time in which to serve and file an answer; and that the circuit court properly granted the plaintiff's motion to strike PIC's untimely answer. In short, PIC concedes that it is in default, that is, that PIC has failed without excuse to join issue of law or fact.

II
¶ 10 We turn now to the issue to be decided in the instant case. PIC's petition presents only a single issue for review by this court. That issue pertains to the legal effect of PIC's now-acknowledged default.[5] We decide in the present case this single issue of law that PIC has presented for our review. We do not address or decide any issues decided in the circuit court or court of appeals but not raised in PIC's petition to this court.
¶ 11 The issue that PIC presents in its petition to this court may be stated as follows: Did the answer served timely by PIC's codefendant insureds denying the liability of all defendants inure to PIC's benefit so as to preclude, as a matter of law, a judgment by default against PIC for the plaintiff's damages, notwithstanding PIC's acknowledged default?[6]
¶ 12 PIC contends that because the timely answer of its codefendant insureds denied the liability of all defendants, the effect of PIC's default is limited and partial as a matter of law. PIC asserts that it remains entitled to a trial on the issue of its insureds' causal negligence and PIC's liability to the plaintiff. According to PIC, its default only precludes PIC from contesting that it had at all times material a policy of insurance in full force and effect that provided coverage to PIC's codefendant insureds for malpractice claims of the kind alleged by the plaintiff. In other words, PIC argues that the effect of PIC's default is to admit only its unconditional coverage for the codefendant insureds.
¶ 13 We affirm the decision of the court of appeals. We conclude that the circuit court did not err as a matter of law in rendering a judgment by default against PIC for the plaintiff's damages. We determine, as did the circuit court and the court of appeals, that the timely answer of the codefendant insureds denying the liability of all defendants did not, as a matter of law, preclude a judgment by default against PIC on the issue of liability and damages upon PIC's acknowledged default. We hold that PIC's acknowledged default subjected PIC to a judgment by default for the plaintiff's damages against it.
¶ 14 Accordingly, we affirm the decision of the court of appeals affirming the circuit court's default judgment against PIC for damages.

III
¶ 15 We briefly summarize the facts relevant to the issue that PIC presents for review.
¶ 16 Dale Otto, Shelley Otto, and Ashley Otto filed a complaint against two medical doctors, the clinic employing the doctors, the doctors' and clinic's fictitious insurers, and the Wisconsin Patients' Compensation Fund.[7] The complaint pled, inter alia, causes of action for recovery of damages allegedly caused by the doctors' negligence. Dale Otto died not long after the complaint was filed.
¶ 17 Upon Otto's death, an amended complaint was filed substituting the Estate of Dale Otto for Otto personally and adding Amanda Otto as a named plaintiff.[8] The amended complaint also substituted PIC for the fictitious insurers named in the original complaint and alleged that PIC had, in full force and effect at all material times, a policy of insurance covering the doctors and their employer for the damages alleged by the plaintiff.
¶ 18 The amended complaint pled causes of action for medical negligence not only against the codefendant doctors but also directly "against . . . Physicians Insurance Company of Wisconsin, Inc. . . . ." The plaintiff's amended complaint alleged that PIC's codefendant insureds were negligent causing damages to the plaintiff and that "Physicians Insurance Company of Wisconsin, Inc. . . . [is] directly liable to Plaintiffs in an amount to be proven at trial."
¶ 19 Attorney Guy DeBeau served and filed an answer to the amended complaint on behalf of the doctors and the doctors' employer on November 5, 2003. The answer of the doctors and their employer denied the plaintiff's allegation that the doctors were negligent or that they had caused damages to the plaintiff. Although the answer was not filed or served on behalf of PIC, the answer specifically denied PIC's liability to the plaintiffs for any damages; admitted that PIC "had at a time material hereto a policy of insurance in full force and effect which provided coverage to [the doctors and the doctors' employer] for claims of the nature alleged by the plaintiffs"; and "specifically aver[red] that the extent of coverage provided under said policy is limited by the terms and conditions of said policy. . . ."
¶ 20 The plaintiff served PIC the amended complaint and summons on November 20, 2003, fifteen days after the codefendant insureds had served and filed their answer. The plaintiff initially asked Attorney DeBeau to admit service of the amended summons and complaint on behalf of PIC. For reasons unclear from the record, Attorney DeBeau declined. The plaintiff ultimately served PIC personally through its vice-president of claims.
¶ 21 The amended summons informed PIC that "[w]ithin 45 days of receiving th[e] summons," PIC would be required to "respond with a written answer, as that term is used in Chapter 802 of the Wisconsin Statutes, to the complaint." The amended summons further advised PIC that if it did "not provide a proper answer within 45 days, the court may grant judgment against you for the award of money or other legal action requested in the complaint."
¶ 22 PIC answered some eight months later. On August 23, 2004, PIC answered in the form of an amended answer served and filed by Attorney DeBeau on behalf of the doctors, their employer, and the defendant. PIC's answer was untimely.[9]
¶ 23 The plaintiff moved for judgment by default against PIC and for an order striking PIC's answer. PIC moved for an order enlarging the time to file and serve its answer. The circuit court denied PIC's motion for an order enlarging the time to file and serve its answer, finding that PIC's failure to answer timely was not the result of excusable neglect.[10] See Wis. Stat. § (Rule) 801.15(2)(a). The circuit court then ordered that PIC's untimely answer be struck and that judgment by default be entered against it.
¶ 24 In a brief filed subsequent to the circuit court's order for the entry of default judgment, PIC argued to the circuit court that its default had the sole effect of rendering PIC "estopped from asserting its policy defenses." PIC argued that its default could not preclude PIC from litigating the plaintiff's allegation that the doctors insured by PIC negligently caused damages to the plaintiff. Although the circuit court had already granted the plaintiff's motion for default judgment, PIC argued that the remedy of a default judgment was not available to the plaintiff under the circumstances of the present case.
¶ 25 The circuit court rejected PIC's argument and determined that PIC's default made it subject to a judgment by default for the plaintiff's damages. The circuit court scheduled a hearing to determine the amount of the plaintiff's damages.[11]
¶ 26 After the circuit court determined that PIC would be liable by its default for the plaintiff's damages, the circuit court ordered the codefendant insureds dismissed upon a stipulation between the plaintiff and the insureds. Under the terms of the circuit court's order of dismissal, all claims against the codefendant insureds were dismissed without prejudice and without costs to any party, and the plaintiff covenanted not to refile the action for the remainder of the applicable limitations period. The circuit court's order also provided that no finding would be made as to whether the defendant doctors had been negligent or had demonstrated unprofessional conduct.
¶ 27 After conducting a hearing on damages, the circuit court rendered judgment by default against PIC for the plaintiff's compensatory damages, plus fees, costs, and interest.

IV
¶ 28 We address PIC's argument that the timely answer of the codefendant insureds denying the liability of all defendants inured to PIC so as to preclude a judgment by default against PIC notwithstanding PIC's acknowledged default.
¶ 29 The decision whether to grant a motion for judgment by default lies within the sound discretion of the circuit court.[12] In reviewing a circuit court's discretionary decision, an appellate court decides questions of law imbedded in the circuit court's exercise of discretion independently of the circuit court but benefiting from its analysis.[13] The issue presented in the instant case requires this court to interpret and apply rules of pleading, practice, and procedure adopted by this court pursuant to Wis. Stat. § 751.12. Interpretation of these rules presents a question of law that this court determines independently of the circuit court and court of appeals but benefiting from their analyses.[14]
¶ 30 PIC makes the following arguments in support of its position that the timely answer of the codefendant insureds denying the liability of all defendants inured to it so as to preclude, as a matter of law, a judgment by default against it notwithstanding its acknowledged default: (A) PIC's default cannot establish its liability, because its liability is completely dependent upon the liability of its codefendant insureds and PIC thus cannot admit by its default the negligence of its codefendant insureds; (B) Wisconsin law supports PIC's position; (C) Case law from other jurisdictions supports PIC's position; (D) Case law from other jurisdictions demonstrates that the circuit court's default judgment against the defendant improperly invited inconsistent outcomes in the action; and (E) Public policy considerations support limiting the effect of PIC's default to an admission of unconditional coverage. We reject each argument in turn.

A
¶ 31 PIC's first argument is that its liability is completely dependent upon the liability of its codefendant insureds and that it therefore cannot admit by its default the negligence of its codefendant insureds. We conclude that this argument is contrary to Wis. Stat. § 632.24, Wisconsin's "direct action" statute.
¶ 32 The direct action statute provides that any liability policy covering negligence makes the insurance company liable to the person entitled to recover against the insured up to the policy limits. Under the direct action statute, the complaining party may allege the insured's conduct, and the insurer's liability therefor, directly against the insurer. The statute renders the insurer "directly liable" for the conduct of its insured.[15] "[J]udgment may be directly against the insurer and . . . payment must be made directly to the injured party."[16] In addition, the insured is not a necessary party to the action brought against its insurer.[17]
¶ 33 Section 632.24 provides in full as follows:
DIRECT ACTION AGAINST INSURER. Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.
¶ 34 The text of the direct action statute contradicts PIC's assertion that PIC's liability is "completely dependent on [its insureds'] liability."[18] The statute expressly states that an insurer may be liable "irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured."
¶ 35 An insurer's liability is, of course, dependent upon the conduct of its insured, but the insurer's liability is not necessarily dependent on the insured's liability. There can be no recovery against the insurer unless the insured's conduct giving rise to liability is proven.
¶ 36 Our cases interpreting and applying the direct action statute establish that "[t]he responsibility of an insurance company to an injured party is derivative of the insured's conduct, but it is not derivative of the status of the insured's personal liability to a plaintiff. . . ."[19] The case law further establishes that liability may be imposed "upon the insurer irrespective of whether there is a final judgment against the insured."[20] Indeed, under certain circumstances, the insurer may be subject to a judgment against it even when recovery against the insured is precluded by law.[21]
¶ 37 Kujawa v. American Indemnity Co., 245 Wis. 361, 14 N.W.2d 31 (1944), provides one such example. This court held in Kujawa that Kujawa could proceed with a properly commenced action against a defendant insurer although recovery against the tortfeasor-insured was barred under the applicable statute of limitations.
¶ 38 Kujawa sued American Indemnity for damages that Kujawa suffered in an automobile accident allegedly caused by the tortious conduct of American Indemnity's insured. Kujawa did not bring action against the tortfeasor-insured. After Kujawa's action was commenced, the time allotted under the applicable statute of limitation expired, barring Kujawa's cause of action against the tortfeasor-insured. The trial court granted American Indemnity's motion for summary judgment against Kujawa, holding that "[t]here being no liability on the part of [the insured] then there is no liability on the part of the insurance carrier because under its contract there is no one to indemnify."[22]
¶ 39 This court reversed the trial court's decision, permitting Kujawa to proceed with the cause of action against American Indemnity, although the insured could not be liable to Kujawa. The court stated that under the Wisconsin direct action statute, Kujawa was entitled to pursue the cause of action against the defendant insurer alone.[23] So long as Kujawa had a cause of action against the insured at the time the action was commenced, further discussion about the statute of limitation was, according to this court, "unnecessary."[24] It was of no moment that Kujawa's action could result in recovery against American Indemnity when the statute of limitation would bar any recovery against the insured.
¶ 40 A necessary corollary of the insurer's direct liability to an injured complainant is that the insurer may admit an allegation of its liability, as well as the underlying allegation of the tortious conduct of its insured. When the action is brought directly against the insurer and the insured is not a party to the action, the insurer must have the ability to admit or deny the plaintiff's allegations as the insurer sees fit.
¶ 41 The plaintiff in the present case pled causes of action for medical negligence directly against PIC. The plaintiff alleged, directly against PIC, that PIC's insureds negligently caused damages to the plaintiff and that PIC was "directly liable" to the plaintiff due to the causal negligence of its insured. PIC was obligated to answer these allegations.
¶ 42 The ordinary rule is that the allegations in a complaint "are admitted when not denied" in the answer of a defendant against whom the allegations are made.[25] Furthermore, when a defendant is determined to be in default, the factual allegations against the defendant, except those relating to the amount of damages, ordinarily are deemed true.[26] Nothing in the nature of an insurer's liability to the plaintiff serves to impair the operation of these general rules.
¶ 43 Although we conclude that the direct action statute shows that PIC may admit by its default the negligence of its codefendant insureds and its own consequent liability to the plaintiff, we do not conclude that the direct action statute shows that PIC's default must constitute such an admission under the circumstances of the present case. The plaintiff in the present case brought action not only against PIC but also against PIC's insureds, who answered timely denying the liability of all defendants. The direct action statute does not speak to the question whether the timely answer of an insured denying liability may inure to the benefit of a defaulting insurance company so as to preclude a judgment by default against it for the plaintiff's damages. We examine PIC's other arguments supporting its position that an insured's answer inures to the benefit of a defaulting insurance company when the insured's liability has not been determined and the insured is dismissed from the case.

B
¶ 44 PIC's second argument is that Wisconsin law demonstrates that despite PIC's default, PIC can take advantage of its insureds' denial of negligence. We disagree with PIC. The effect of PIC's acknowledged default was to expose PIC to a judgment by default against it for damages.
¶ 45 We begin with Wis. Stat. § (Rule) 806.02, governing default judgment cases. Default judgment may be rendered if no issue of law or fact has been joined and if the time for joining issue has expired. Sections (Rules) 806.02(1) and (2), which are relevant to the present case in which PIC defaulted for failure to answer timely, provide in full as follows:
(1) A default judgment may be rendered as provided in subs. (1) to (4) if no issue of law or fact has been joined and if the time for joining issue has expired. Any defendant appearing in an action shall be entitled to notice of motion for judgment.
(2) After filing the complaint and proof of service of the summons on one or more of the defendants and an affidavit that the defendant is in default for failure to join issue, the plaintiff may move for judgment according to the demand of the complaint. If the amount of money sought was excluded from the demand for judgment, as required under s. 802.02 (1m), the court shall require the plaintiff to specify the amount of money claimed and provide that information to the court and to the other parties prior to the court rendering judgment. If proof of any fact is necessary for the court to give judgment, the court shall receive the proof.
¶ 46 Sections (Rules) 806.02(1) and (2) are, on their face, inconsistent with PIC's position that the answer of its codefendants denying the liability of all defendants precludes a judgment by default against PIC for damages.
¶ 47 Subsection (1) expressly authorizes the circuit court to render a judgment by default in circumstances when, as in the present case, "no issue of law or fact has been joined and . . . the time for joining issue has expired." PIC concedes that it has failed in the present case to join issue of law or fact and that the time for joining issue has expired.
¶ 48 Moreover, although subsection (1) expressly contemplates cases involving multiple defendants ("Any defendant appearing in an action shall be entitled to notice of motion for judgment. . . ."), the text of the subsection does not suggest that there may be circumstances in which one defendant may join issue of fact or law on behalf of another. The plain language of § (Rule) 806.02(1) thus seems to render a defendant subject to a default judgment against it for its failure to join issue of law or fact.
¶ 49 Subsection (2) further reinforces the concept that the effect of a defendant's default is to make available the remedy of a judgment by default against the defendant. Subsection (2) plainly states that when a defendant is in default for failure to join issue, "the plaintiff may move for judgment according to the demand of the complaint." Nothing in the text of subsection (2) suggests that the plaintiff's right to move for judgment against a defendant in default may be conditional upon the content of an answer served timely by a codefendant not in default.
¶ 50 Significantly, the default judgment statute provides no circumstances in which a party is in default and yet is exempt as a matter of law from the provisions of the default judgment statute. PIC's argument is essentially that such an exemption does exist: PIC concedes that it is in default in the present case yet denies that a default judgment may be rendered against it under the default judgment statute. We see no textual basis for recognizing the exemption proposed by PIC.
¶ 51 In addition to the default judgment statute, we look to Wis. Stat. § (Rule) 802.02, which governs pleadings. We examine, in particular, Wis. Stat. § (Rule) 802.02(2) and (4), setting forth general rules for denying allegations in the plaintiff's complaint and specifying the effect of a defendant's failure to deny such allegations. These subsections provide in full as follows:
(2) DEFENSES; FORM OF DENIALS. A party shall state in short and plain terms the defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies. If the party is without knowledge or information sufficient to form a belief as to the truth of an averment, the party shall so state and this has the effect of a denial. Denials shall fairly meet the substance of the averments denied. The pleader shall make the denials as specific denials of designated averments or paragraphs, but if a pleader intends in good faith to deny only a part or a qualification of an averment, the pleader shall specify so much of it as is true and material and shall deny only the remainder.
. . . .
(4) EFFECT OF FAILURE TO DENY. Averments in a pleading to which a responsive pleading is required, other than those as to the fact, nature and extent of injury and damage, are admitted when not denied in the responsive pleading, except that a party whose prior pleadings set forth all denials and defenses to be relied upon in defending a claim for contribution need not respond to such claim. Averments in a pleading to which no responsive pleading is required or permitted shall be taken as denied or avoided.
¶ 52 Like the default judgment statute, Wis. Stat. § (Rule) 802.02(2) and (4) are inconsistent with PIC's position in the present case. The text of these provisions belies the premise, implicit in PIC's argument, that PIC is justified in assuming that a codefendant's answer denying common allegations in the plaintiff's complaint has the effect of permitting it to forgo responding to those same allegations without repercussion.
¶ 53 Subsection (2) establishes a defendant's duty to respond to the plaintiff's pleadings without qualifying this duty by reference to the responsive pleadings of a codefendant. Section (Rule) 802.02(2) simply mandates that "[a] party shall state in short and plain terms the defenses to each claim asserted and shall admit or deny the averments upon which the adverse party relies" (emphasis added). Nothing in the text of subsection (2) suggests that this clear language requiring a party to admit or deny the plaintiff's averments may not apply when a codefendant of the party has denied an averment on behalf of the party.
¶ 54 Wisconsin Stat. § (Rule) 802.02(4) also stands in clear and direct contradiction to PIC's position in the present case. Subsection (4) establishes that averments in a plaintiff's complaint are deemed to be admitted when not denied in a defendant's responsive pleading, with certain exceptions. These exceptions, applying when an averment pertains "to the fact, nature and extent of injury and damage" or when the defendant's "prior pleadings set forth all denials and defenses to be relied upon in defending a claim for contribution," do not include the exception that PIC seeks in the present case. Section (Rule) 802.02(4) does not suggest that the general rule stated therein cannot apply when the averment is denied in the separate responsive pleading of a codefendant.
¶ 55 Wisconsin Stat. § (Rule) 802.02(4) demonstrates that PIC's default made a judgment against it appropriate within the discretion of the circuit court. In support of causes of action pled directly against PIC, the plaintiff alleged that PIC's insureds were negligent causing damages to the plaintiff and that PIC is "directly liable" to the plaintiff for these damages. PIC, in failing to deny this allegation of its liability in a timely answer, admitted it. With the issue of liability resolved by virtue of PIC's default, only the amount of damages was left to be determined before entry of judgment against PIC.[27]
¶ 56 Moreover, PIC's position is contrary to Wis. Stat. §§ (Rules) 802.06(1) and 802.09(1). These provisions establish PIC's unequivocal duty to serve its answer timely to the complaint served against it.[28] Our precedent recognizes the importance of these provisions. We have held that "[t]he Wisconsin rules expect that answers will be timely served and promptly filed. Courts ought to have authority to impose a serious sanction for failure to timely `serve,' and an appropriate sanction, however modest, for failure to file `within a reasonable time after service.'"[29]
¶ 57 PIC's position does not comport with the statutory provisions imposing a duty to serve an answer timely or with our case law recognizing the circuit court's authority to impose a serious sanction for failure to serve an answer timely.
¶ 58 PIC suggests that the consequence of its default in the present case is merely an admission of unconditional coverage. This consequence, however, is no consequence at all when the insurer's obligation to insure the matter (and the extent of this obligation) is not contested.[30] PIC concedes that insurance coverage is clear and that it never contested coverage and never intended to contest coverage.
¶ 59 The rule PIC proposes would render the mandatory provisions of Wis. Stat. §§ (Rule) 802.06(1) and 802.09(1) virtually optional in cases in which the insurer indisputably provides coverage for the damages alleged in the plaintiff's complaint.
¶ 60 Martin v. Griffin, 117 Wis. 2d 438, 440, 344 N.W.2d 206 (Ct. App. 1984), is germane to the present case. In Martin, the court of appeals sustained a default judgment on facts and issues not significantly distinguishable from those of the present case.
¶ 61 In the Martin case, Martin brought action against Griffin, Aetna Casualty (insurer of the vehicle operated by Griffin), and Milbank Mutual (Griffin's personal insurer), alleging that Griffin's negligence caused $ 150,000 in damages to Martin.[31] Aetna Casualty answered timely on behalf of itself and Griffin, denying that Griffin was negligent and alleging that the accident was caused by Martin's negligence.[32] Milbank Mutual's answer was not timely. The circuit court struck Milbank Mutual's untimely answer, dismissed Milbank Mutual's codefendants from the action, and entered a judgment by default against Milbank Mutual in the amount of $150,000.
¶ 62 Relevant to the present case, Milbank Mutual argued on appeal that the circuit court erroneously exercised its discretion in striking Milbank Mutual's untimely answer and granting a default judgment against it for damages. Milbank Mutual contended that its failure to answer timely was due to excusable neglect, explaining that the claims supervisor responsible for handling Martin's complaint had "concluded erroneously that Aetna's answer was sufficient to protect Milbank and its insured," given that "Aetna was the primary insurer and provided coverage exceeding the damages demanded in the complaint."[33] Milbank Mutual further explained that it generally wrote no coverage "in Wisconsin or in any state allowing insurance companies to be sued directly or requiring them to answer complaints involving their insureds."[34]
¶ 63 The Martin court of appeals affirmed the circuit court's default judgment for damages, holding that "[i]t is not excusable neglect, as a matter of law, for an insurance company to fail to file a timely answer due to the good faith belief of its personnel that, since there appeared to be a primary insurer with coverage exceeding damages alleged in the complaint, Wisconsin law did not require it to answer."[35]
¶ 64 The facts of Martin are not significantly distinguishable from those of the present case. In Martin, Milbank Mutual's codefendant Aetna Casualty answered timely on behalf of itself and the defendant insured, denying Martin's allegation that the defendant insured was negligent. In the instant case, the codefendant insureds similarly answered timely on their own behalf, denying the plaintiff's allegation of negligence. There is no principled reason that PIC should be spared a default judgment against it when the default judgment against Milbank Mutual was sustained despite the timely answer of Milbank Mutual's codefendant denying negligence on the part of Milbank Mutual's codefendant insured.
¶ 65 The arguments set forth by the defendant insurers in Martin and the instant case, although structured differently, are essentially the same for purposes of the present case. The position of PIC in the present case, like the position of the defendant insurer in Martin, rests upon the premise that the timely answer of a codefendant may have the effect of precluding judgment by default against a defendant insurer who fails to answer timely. In Martin, Milbank Mutual argued that it could excusably rely upon the timely answer of its codefendant so as to avoid a default situation (and thus also to avoid a default judgment). PIC concedes its default but argues that, even in default, it is entitled to rely upon the timely answer of its codefendant to avoid a default judgment.
¶ 66 Indeed, PIC's argument in the present case seems to be a more ambitious version of the argument that Milbank Mutual set forth in Martin. Milbank Mutual contended only that its reliance upon the answer of its codefendant, although erroneous, was excusable. PIC asserts a right to rely (in default) upon the answer of its codefendant. What Milbank Mutual claimed as an excuse, PIC in the instant case claims as an entitlement.
¶ 67 In sum, the Martin court of appeals' decision sustaining the circuit court's default judgment against Milbank Mutual strongly supports the default judgment rendered against PIC. It makes little sense for PIC to be spared a default judgment for damages against it when Milbank Mutual was subject to a default judgment despite the timely answer of Milbank Mutual's codefendant denying that Milbank Mutual's insured was negligent.
¶ 68 PIC attempts to distinguish Martin on the ground that the defendant insured in Martin failed to answer and was in default. PIC asserts that the insured in Martin "failed to answer" and that "[t]herefore, there was no answer denying negligence that could have inured to the benefit of Millbank [sic]."[36] PIC further asserts that the court of appeals "addressed the effect of [Milbank Mutual's] default separate from the [defendant insured's] default."[37] PIC argues that it was "the effect of the insured's default . . .," not the effect of Milbank Mutual's default, "to establish [the insured's] negligence."[38]
¶ 69 PIC's account of Martin is inaccurate. The Martin court of appeals expressly referenced the answer of Aetna Casualty, Milbank Mutual's codefendant.[39] Although the Martin opinion is silent as to the content of Aetna Casualty's answer, Milbank Mutual's brief to the court of appeals stated that "the answer denied that [the] defendant [insured] was negligent and alleged that the accident was caused by the plaintiff's negligence."[40] PIC's assertion that there was no answer in Martin denying the insured's negligence that could have inured to the benefit of Milbank Mutual is not correct, according to the opinion and briefs in the Martin case.
¶ 70 PIC is also incorrect in asserting that the defendant insured in Martin was in default. Milbank Mutual's brief to the court of appeals stated that "Aetna Casualty and Surety Company interposed an answer on behalf of itself and defendant John Francis Griffin, III [the insured]."[41] Nowhere in its opinion did the Martin court of appeals suggest that any defendant other than Milbank Mutual had failed to answer timely or was in default.
¶ 71 PIC additionally directs our attention to statements in the Martin opinion that PIC interprets as limiting the effect of Milbank Mutual's default to an admission of unconditional coverage. Early in its opinion, the Martin court of appeals stated that "[w]ithout a valid answer, Milbank is deemed by law to have admitted, without qualification, Martin's allegation that it covered Griffin's liability for negligence."[42] A similar statement also appears later in the opinion: "By failing to file a timely answer of denial, Milbank has admitted the unconditioned allegation that its policy covered [the insured] for liability for damages caused by his negligence."[43] PIC argues that these statements show that the court of appeals perceived Milbank Mutual's default to result solely in an admission of unconditional coverage, not in an admission of its insured's negligence or in liability.
¶ 72 We disagree with PIC's interpretation of these statements in the Martin opinion. The court of appeals' assertions about Milbank Mutual's default constituting an admission of coverage were clearly directed at Milbank Mutual's argument that despite its default, Milbank Mutual's liability should be limited according to provisions in its policy with the insured limiting Milbank Mutual's coverage to damages in excess of those that Aetna Casualty (the primary insurer) was obligated to cover. It is unsurprising that the court of appeals responded to Milbank Mutual's contention that it could argue for limited coverage even in default by holding that Milbank Mutual's default constituted an admission of unconditional coverage. Elsewhere in its opinion, the Martin court of appeals described the effect of Milbank Mutual's default more broadly: "Milbank has . . . waived its opportunity to argue issues of liability and the respective obligations of the two insurance companies."[44] This language makes clear that the effect of Milbank Mutual's default was to establish both liability and unconditional coverage irrespective of Aetna's obligations.
¶ 73 Moreover, the Martin court of appeals' mandate affirming the default judgment against Milbank Mutual for damages necessarily implies that Milbank Mutual's default constituted a full-fledged admission of its liability to Martin. No other basis except Milbank Mutual's default existed for a judgment imposing liability on Milbank for the negligence of its insured. As we have stated, the allegation of negligence was denied, not admitted, in the timely answer of Milbank's codefendant. The default judgment against Milbank clearly would have been improper if Milbank's default had not established its liability.
¶ 74 The default judgment against PIC in the instant case is further supported by G erth v. American Star Insurance Co., 166 Wis. 2d 1000, 480 N.W.2d 836 (Ct. App. 1992). Gerth represents another case in which the court of appeals sustained a default judgment on facts not significantly distinguishable from those considered here.
¶ 75 Gerth brought action against Reid Boiler Works and American Star, Reid Boiler's liability insurer. Although the opinion is silent on the matter, Reid Boiler Works apparently answered timely.[45] American Star failed to answer timely. The circuit court denied American Star's motion to extend the time for answering (finding no excusable neglect), granted Gerth's motion to strike American Star's untimely answer, and entered a judgment by default against American Star for damages. PIC correctly states that the Gerth opinion does not discuss whether an answer of a codefendant should inure to the benefit of the insurer. Gerth is about excusable neglect, an issue not before us in the present case. But the result in Gerth does not favor PIC.
¶ 76 Finally, we also find support in Pett v. Clark, 5 Wis. 198 (1856). In Pett, the circuit court entered a default, and ultimately rendered a default judgment, against defendants Reynolds and Clark. Reynolds, however, previously had filed a plea that was not struck and that remained in the court's record.
¶ 77 On appeal, the Wisconsin Supreme Court held that when a plea was on file with the circuit court, "a default could not be entered against the defendant pleading it."[46] Relevant to the instant case, here the default judgment was not entered against the insureds who had filed an answer. The insureds in the instant case voluntarily agreed to be dismissed from the case. The Pett court did not hold that the defendant with no plea on file, here PIC, was immune to the entry of a default.
¶ 78 PIC adduces two Wisconsin cases that it characterizes as in its favor: Leonard v. Cattahach, 214 Wis. 2d 236, 571 N.W.2d 444 (Ct. App. 1997), and Haugen v. Wittkopf, 242 Wis. 276, 7 N.W.2d 886 (1943). However, neither Leonard nor Haugen is on point in the present case.
¶ 79 The Leonards brought action against defendants Sandra Conley and DuPont Mutual (Conley's insurer), alleging that Conley negligently caused damages to the Leonards. Conley answered timely, denying the Leonards' allegation of negligence and asserting a cross-claim against a codefendant who also allegedly negligently caused damages to the Leonards. DuPont Mutual failed to answer timely. The circuit court struck DuPont Mutual's untimely answer and entered a judgment by default against it for damages.
¶ 80 Relevant to the instant case, DuPont Mutual argued on appeal that even assuming its answer was properly stricken, the circuit court erred by entering final judgment for damages in excess of DuPont Mutual's policy limits.[47] DuPont Mutual contended that the circuit court should have taken account of DuPont Mutual's policy limits, because Conley's [the insured's] answer stated that DuPont Mutual's policy of insurance had terms and limitations on DuPont Mutual's obligation to pay.[48] The court of appeals rejected this argument, refusing to presume that Conley's answer "was meant by Conley to plead DuPont's policy limits and thereby increase her exposure, if damages proved to be greater than those limits."[49] The court of appeals affirmed the judgment by default for damages in excess of policy limits entered against DuPont Mutual.
¶ 81 Although it affirmed the circuit court's default judgment, which necessarily implied that DuPont Mutual's default established DuPont Mutual's liability to the Leonards, the court of appeals questioned (without deciding) whether DuPont Mutual's default indeed had such an effect. In a footnote, the Leonard court of appeals stated as follows:
Although the Leonards' complaint alleged only that DuPont had an obligation to pay "all sums which Sandra K. Conley might become legally obligated to pay," DuPont did not argue to the circuit court, and has not argued to us, what effect Conley's answer, which denied negligence and asserted a cross-claim against [a codefendant], had on the apportionment of negligence and thus on DuPont's exposure to damages. Therefore, we do not address that issue. . . . "[50]
¶ 82 In Leonard, the court of appeals and the parties did not directly deal with the issue of whether an insured's answer should benefit the insurer. The result in Leonard, however, does not favor PIC.
¶ 83 Haugen, 242 Wis. 276, the remaining Wisconsin case relied on by PIC, is also not on point in the present case. Haugen was not a default judgment case and did not involve a defendant's failure to answer denying any allegation.
¶ 84 Haugen brought action against Wittkopf and his insurer, seeking recovery for injuries Haugen sustained as a passenger in a vehicle operated by Wittkopf. Wittkopf answered timely, asserting as an affirmative defense that Haugen had assumed (by acquiescence) any risk incident to Wittkopf's negligence. The insurer also answered timely but did not assert the affirmative defense asserted by Wittkopf. Trial was had to a jury, which found that Haugen had not assumed the risk incident to Wittkopf's negligence. Wittkopf and the insurer appealed together, arguing that Haugen had assumed the risk incident to Wittkopf's negligence as a matter of law.
¶ 85 This court agreed with Wittkopf and his insurer and reversed the judgment of the circuit court. Relevant to the present case, this court then considered Haugen's argument that Wittkopf's insurer was "not entitled to the benefit of [Haugen's] assumption of risk, because it [the insurer] did not plead it as a defense."[51] Assuming (without deciding) that such defense could be raised only by pleading, this court held that the insurer's failure to raise the defense in its answer was immaterial. The Haugen court explained that the insurer's liability was "to indemnify [Wittkopf] and as Wittkopf is not liable the insurer is not and there can be no recovery against it."[52]
¶ 86 Haugen stands for the proposition that when the insured and the insurer are parties and each answers timely, the insurer cannot be held liable when the plaintiff fails to prove on the merits that the insured's conduct provides a basis for liability.
¶ 87 Haugen is of limited relevance to the present case. Wittkopf's insurer did not fail to answer timely or to deny Haugen's allegation of liability. Haugen addresses a different issue: the effect of an insurer's failure to plead an affirmative defense that the insured successfully used. Wittkopf's insurer was spared judgment because Wittkopf succeeded at trial in showing that his conduct provided no basis for his liability or that of his insurer.
¶ 88 The Haugen court did not address the hypothetical question whether Wittkopf's answer denying liability would have precluded a judgment by default against the insurer if the insurer had failed to answer Haugen's complaint timely. Likewise, we do not address here the hypothetical case in which PIC's codefendant insureds succeeded in showing at trial that their conduct did not provide a basis for their or PIC's liability.

C
¶ 89 PIC argues that case law from other jurisdictions supports PIC's position in the present case that despite its default PIC can take advantage of its insureds' denial of negligence. The cases PIC cites all apply some version of the "common defense" doctrine. According to the common defense doctrine, "[t]he answer of the codefendant inures to the benefit of a defaulting defendant where there exists a common defense as to both of them."[53]
¶ 90 The cases reveal substantial variation in the manner in which the "common defense" doctrine is applied. The cases also provide little, if any, support to PIC. Indeed, the cases upon which PIC relies appear to show that the position advanced by PIC is one unknown to the law of any jurisdiction.
¶ 91 PIC begins its examination of the cases of other jurisdictions with discussion of a Florida case, Rothman v. Hebebrand, 720 So. 2d 595 (Fla. Dist. Ct. App. 1998). Rothman, however, is distinguishable from the present case. Furthermore, the version of the "common defense" doctrine applied by the Florida courts would be of no avail to PIC even if the doctrine did apply to the present case.
¶ 92 In the Rothman case, Hebebrand sued Rothman (a medical doctor) and his professional association for damages allegedly stemming from Rothman's medical malpractice. The professional association defaulted and judgment was entered against it. The action proceeded against Rothman, who prevailed before the jury. On appeal, the professional association argued that because the association's liability could only be vicarious, the trial court had erred in refusing to set aside its default after Rothman was exonerated of liability.
¶ 93 The Florida Court of Appeals held for the professional association. The Rothman court of appeals relied on a line of Florida cases holding that "if the liability of a defaulting defendant is completely dependent upon the liability of a non-defaulting codefendant, a final judgment should not be entered against the defaulting defendant unless the codefendant has been found liable."[54]
¶ 94 Rothman is distinguishable from the present case. In Rothman, the defaulting party's liability is vicarious. In the present case the insurer's liability is not completely dependent on the liability of a non-defaulting defendant. Rather, the insurer's liability depends on the insured's conduct. The action in the present case against the codefendant insureds did not proceed to jury; the codefendant insureds in the present case have not been exonerated by a jury. Rothman is more like Haugen, 242 Wis. 276, in that a codefendant insured obtained a judgment in its favor showing that the insured's conduct could not provide a basis for the insurer's liability to the plaintiff. Unlike in Rothman or Haugen, PIC's codefendant insureds stipulated to their dismissal from the action and did not obtain a judgment showing that their conduct could not provide a basis for PIC's liability.
¶ 95 More importantly, application of the Florida "common defense" rule would be of no avail to PIC given the procedural facts of the instant case. Although the Florida courts recognize that a defaulting defendant may escape a default judgment when its liability is completely dependent upon the liability of a non-defaulting codefendant,[55] the Florida courts do not appear to go so far as to permit the defaulting defendant to continue participating in the litigation despite its default. For example, in Days Inns Acquisition Corp. v. Hutchinson, 707 So. 2d 747, 751 (Fla. Dist. Ct. App. 1997), the Florida Court of Appeals reversed the entry of a final default judgment against Days Inns because no determination had been made on the merits of the plaintiff's claim against a non-defaulting codefendant. The Florida Court of Appeals then noted as follows: "By this opinion we do not imply that Days Inns can participate as a party or otherwise defend against plaintiff's claim against [the non-defaulting defendant]."[56]
¶ 96 Were this court to apply the Florida rule faithfully, PIC in the present case could not participate in the action as a party defendant at the circuit court level on the issue of negligence and liability.
¶ 97 PIC's inability to participate further in the action on the issue of negligence and liability in the circuit court would render meaningless PIC's request that this court remand the matter to the circuit court for "further proceedings so the disputed negligence and damage allegations can be tried on the merits."[57] PIC is the sole defendant remaining in the action. The codefendants were dismissed by order of the circuit court, an order from which PIC has declined to appeal. With PIC unable to participate in the action on the issue of negligence and liability, a circuit court has no "further proceedings" to conduct.
¶ 98 At least one jurisdiction, Arkansas, seems to permit a defaulting defendant to carry on as a participant when a codefendant has answered timely and asserted a defense common to all the defendants. It appears that under Arkansas law, the timely answer of a codefendant asserting a common defense altogether cures the default problem. For example, in Sutter v. Payne 989 S.W.2d 887 (Ark. 1999), the Arkansas Supreme Court held that "[b]ecause [the timely answer of a codefendant] was still viable at the time that [the defaulting defendant] answered the petition . . . the trial court erred when it ruled that the common-defense doctrine did not apply. . . ."[58] The Arkansas Supreme Court then stated its mandate in relevant part as follows: "Accordingly, we reverse the trial court's order striking [the untimely] answer. . . ."[59] With its answer not struck, the dilatory party in Sutter could not be in default.
¶ 99 PIC cannot argue for adoption of the Arkansas rule under the circumstances of the present case. Under the Arkansas rule, the untimely answer is not struck, and the default is cured. PIC, however, concedes that the circuit court properly struck PIC's untimely answer and that PIC is in default in the present case.
¶ 100 The remaining cases cited by PIC fail to aid PIC's case. Many state the rule that a defaulting defendant may benefit from a codefendant's successful defense demonstrating that there can be no factual basis for the defaulting defendant's liability to the plaintiff.[60] In the instant case no judgment has been obtained by a codefendant demonstrating that there is no factual basis for PIC's liability. Others appear to hold (like Sutter) that the timely answer of a codefendant prevents default.[61]
¶ 101 No case cited by PIC appears to recognize the unusual rule that PIC asks this court to adopt in the present case: PIC concedes that it is in default and yet asserts that it is entitled to proceed indefinitely in the action as a party defendant on the issue of liability and damages.

D
¶ 102 PIC urges that case law from other jurisdictions demonstrates that the circuit court's judgment against it improperly invites inconsistent outcomes in the action. PIC argues that inconsistent outcomes remain possible because the circuit court dismissed the codefendant insureds without prejudice and without a finding regarding whether the insureds were negligent. PIC does not allege, however, error in the circuit court's order dismissing the codefendants from the action.
¶ 103 PIC relies principally upon Frow v. De La Vega, 82 U.S. 552 (1872), in contending that this risk of inconsistent outcomes renders the circuit court's judgment improper.
¶ 104 In Frow, De La Vega brought action against Frow and thirteen other defendants, alleging that eight of the defendants (including Frow) had jointly conspired to defraud De La Vega. Frow's codefendants answered timely, but Frow did not. The trial court entered a final decree against Frow. The action against Frow's codefendants, however, proceeded and was resolved to the disfavor of De La Vega and in favor of Frow's codefendants.
¶ 105 The United States Supreme Court held that it was error for the trial court to make a final decree against Frow while the cause proceeded undetermined against Frow's codefendants. The Frow Court explained that the circuit court's procedure risked that "there might be one decree of the court sustaining the charge of joint fraud committed by the defendants; and another decree disaffirming the said charge, and declaring it to be entirely unfounded, and dismissing the complainant's bill."[62] The Court denounced such a result as "unseemly and absurd."[63] Frow is interpreted in a number of ways.[64] It can stand for the proposition that if at trial a defendant is exonerated and if a defaulting codefendant's liability depends on the liability of the former, the plaintiff cannot obtain a judgment from the latter defendant.
¶ 106 PIC argues that, like in Frow, "a significant possibility of inconsistent outcomes" remains in the present case.[65] We disagree with PIC. The outcome for PIC (a judgment for damages against it) and the outcome for PIC's codefendant insureds (dismissal of the action against them with no finding of liability) are not necessarily inconsistent. PIC has not sought review of the dismissal. Liability may be imposed "upon the insurer irrespective of whether there is a final judgment against the insured."[66]
¶ 107 Frow is not on point in the instant case. Unlike in Frow, the cause in the present case did not proceed against non-defaulting defendants. The circuit court dismissed all codefendants from the action and accepted the plaintiff's covenant not to refile the action within the applicable limitations period.
¶ 108 Moreover, even if Frow did apply, the rule stated therein would be of no avail to PIC. Under the Frow rule, PIC could not participate in any further proceedings that this court might order on remand. The Frow Court stated the effect of Frow's default as follows: "The defaulting defendant has merely lost his standing in court. He will not be entitled to service of notices in the cause, nor to appear in it in any way. He can adduce no evidence, he cannot be heard at the final hearing. . . . "[67]
¶ 109 The Frow rule thus presents the same problem for PIC that the Florida rule does. Unsurprisingly, the Florida courts rely upon Frow in deciding their cases regarding defaulting defendants.[68] Without PIC's participation in any further proceedings in the circuit court, there can be no further proceedings because no defendants would be present.
¶ 110 In sum, Frow does not support PIC's position that the circuit court's judgment was in error. Frow contradicts the defendant's position that a party may, despite its default, continue to participate in the action.

E
¶ 111 PIC's final argument is that public policy considerations support limiting, as a matter of law, the effect of PIC's default to an admission of unconditional coverage. PIC argues that as a matter of law the circuit court should have considered a lesser sanction than default judgment, such as a monetary sanction, under the circumstances of the present case.
¶ 112 Conflicting public policy considerations underlie our procedural rule requiring that responsive pleadings be timely served and our procedural rule authorizing circuit courts "to impose a serious sanction for failure to timely serve" an answer.[69] On the one hand, prompt proceedings are important. On the other hand, litigants should have their day in court; default judgments are disfavored.
¶ 113 These conflicting public policies are set forth in Hedtcke v. Sentry Insurance Co., 109 Wis. 2d 461, 469, 326 N.W.2d 727 (1982).
¶ 114 We explained in Hedtcke that a circuit court grants a motion to enlarge the time in which to answer if the court "finds reasonable grounds for noncompliance with the statutory time period (which the statute and this court refer to as excusable neglect) and if the interests of justice would be served by the enlargement of time, e.g., that the party seeking an enlargement of time has acted in good faith and that the opposing party is not prejudiced by the time delay."[70]
¶ 115 PIC does not fit into the Hedtcke analysis. PIC agrees that it does not fit into the first step set forth in Hedtcke, namely that its failure to answer timely was the result of excusable neglect. Thus PIC is not able to fit into the second part of Hedtcke's analysis, pertaining to the "interests of justice," that requires the circuit court to apply the conflicting public policies to the facts of the case before it.[71] The Hedtcke court stated as follows: "If the motion [for enlargement of the time in which to answer] is made after the expiration of the specified time, an order enlarging the time for performing an act must be based on a finding of excusable neglect; when the circuit court determines that there is no excusable neglect, the motion must be denied."[72]
¶ 116 PIC does not dispute that in the absence of a finding of excusable neglect, a circuit court shall deny a defendant's motion to enlarge the time in which to answer. PIC does not argue that after the circuit court has denied a defendant's motion to enlarge the time in which to answer, the circuit court is still required to weigh policy considerations prior to granting a motion for default judgment against the defendant.[73]
¶ 117 In other words, PIC does not argue that the circuit court erred by failing to make, at some stage of the process, a discretionary determination regarding whether a default judgment against PIC is consistent with sound public policy or with the interests of justice. Rather, PIC's argument is that this court should hold that the circuit court was altogether precluded as a matter of law from rendering a default judgment for damages against PIC for serving a late answer when the plaintiff has not shown prejudice.
¶ 118 We cannot conclude that the circuit court's default judgment against PIC is inconsistent with sound policy as a matter of law. PIC has caused its own problems by its default without excusable neglect.
¶ 119 PIC agrees in this court that it failed to answer timely the complaint against it alleging the defendant's direct liability; that it has no excuse for its failure to answer the complaint timely; and that it is irreparably in default with no answer before the circuit court. Under these circumstances, we cannot hold that the circuit court's judgment of default awarding damages against PIC is inconsistent with sound public policy as a matter of law. We cannot conclude that the result in the present case gives undue weight to the policy of promoting prompt adjudication or insufficient weight to the policy of affording litigants a day in court whenever reasonably possible.
¶ 120 For the reasons set forth, we conclude that the timely answer of the codefendant insureds denying the liability of all defendants did not preclude a judgment by default against the defendant for damages upon its acknowledged default.

* * * *
¶ 121 We affirm the decision of the court of appeals affirming the circuit court's default judgment against PIC for damages. We conclude that the circuit court did not err as a matter of law in rendering a judgment by default against PIC for the plaintiff's damages. We determine, as did the circuit court and court of appeals, that the timely answer of the codefendant insureds denying the liability of all defendants did not preclude a judgment by default against PIC on the issue of liability and damages upon the PIC's acknowledged default. We hold that PIC's acknowledged default subjected PIC to a judgment by default for the plaintiff's damages against it.
¶ 122 Accordingly, we affirm the decision of the court of appeals affirming in part and reversing in part the judgment of the circuit court.
By the Court.The decision of the court of appeals is affirmed.
¶ 123 PATIENCE DRAKE ROGGENSACK, J. (dissenting).
Physicians Insurance Company (PIC) contracted to provide liability insurance for damages that its insureds caused by medical malpractice. The majority opinion affirms the court of appeals' conclusion that PIC's failure to answer within the statutorily prescribed time results in the following conclusive factual findings: (1) PIC's insureds were negligent; and (2) PIC's insureds' negligence was causal of plaintiffs' damages.[74] PIC's insureds, in their answer to the amended complaint, denied that their conduct was negligent and denied that their conduct caused plaintiffs' damages, which denials joined those issues of fact and have not been stricken or proven false. Under the direct action statute, Wis. Stat. § 632.24 (2005-06),[75] PIC cannot be liable unless its insureds' conduct was negligent and a cause of plaintiffs' damages. Kranzush v. Badger State Mut. Cas. Co., 103 Wis. 2d 56, 75, 307 N.W.2d 256 (1981). Therefore, the matter should be returned to the circuit court to litigate the contested factual questions relating to PIC's insureds' conduct. Because the majority opinion disconnects PIC's liability from the insureds' conduct contrary to the legislative directive, I respectfully dissent.

I. BACKGROUND
¶ 124 Undisputed facts that gave rise to a default judgment being entered against PIC are fully set out in the majority opinion; therefore, I will not review them here in any detail. Briefly, PIC contracted to provide insurance to Charles L. Folkestad, M.D., Terrance J. Witt, M.D. and Red Cedar ClinicMayo Health System (hereinafter, the insureds). The insureds were sued for negligence in the provision of medical services to Dale Otto, who died shortly after this action was commenced.
¶ 125PIC was first named in the amended complaint, as an alleged insurer. A default judgment was entered against PIC because, although its attorney filed an answer to the amended complaint for the insureds in this malpractice action and raised defenses for PIC, through a scrivener's error, he did not name PIC as a party for whom he provided representation.
¶ 126 After almost a year of litigation in which the attorney for PIC participated in negotiations and discovery in preparation for trial, the plaintiffs discovered the scrivener's error and moved for default judgment against PIC. The circuit court granted plaintiffs' motion.[76]
¶ 127 The question presented here is whether in direct action litigation the scope of an insurer's default in failing to timely answer includes conclusive findings that the insureds were negligent and that their negligence caused plaintiffs' damages, even though the insureds denied that medical care was negligently provided and denied that their conduct caused plaintiffs' damages.
¶ 128 The circuit court concluded that because of the direct action statute, Wis. Stat. § 632.24, PIC's default resulted in admissions that the insureds were negligent and that the insureds' negligence caused plaintiff's damages. The court of appeals, in reliance on § 632.24, affirmed the circuit court's conclusion. Otto v. Physicians Ins. Co. of Wis., Inc., No. 2006AP1566, slip op., ¶¶23, 26 (Wis. App. Jul. 24, 2007). The majority opinion affirms as well.

II. DISCUSSION
A. Standard of Review
¶ 129 Although whether to hold a party in default for failure to timely answer is a discretionary decision of the circuit court, Connor v. Connor, 2001 WI 49, ¶¶17-18, 243 Wis. 2d 279, 627 N.W.2d 182, we are not reviewing that discretionary decision here. Rather, this case turns on the interpretation and application of Wis. Stat. § 632.24, known as the direct action statute. We review questions of statutory interpretation and application independently, but benefiting from the discussions of the court of appeals and the circuit court. Marder v. Bd. of Regents of the Univ. of Wis. Sys., 2005 WI 159, ¶19, 286 Wis. 2d 252, 706 N.W.2d 110.
B. PIC's Potential Liability
¶ 130 PIC can be liable to the plaintiffs through two mechanisms: (1) solely by virtue of its contract with the insureds, or (2) through the combination of its contract and the direct action statute, Wis. Stat. § 632.24.
1. PIC's contract
¶ 131 PIC's contract of insurance requires it to pay only those damages that its insureds are legally obligated to pay.[77] Here, the insureds have denied negligence and causation of plaintiffs' damages. They have been dismissed from this action; accordingly, they are legally obligated to pay nothing to the plaintiffs. Therefore, on a purely contractual basis, PIC has no liability to anyone for the plaintiffs' damages.
2. Direct action
¶ 132 The circuit court and the court of appeals rested their determinations of PIC's liability on the direct action statute, Wis. Stat. § 632.24. The majority opinion also relies on § 632.24 as a necessary component to PIC's liability.[78] Indeed, since the insureds have not been determined to be liable to the plaintiffs, the only basis on which liability can be developed against PIC is under the direct action statute. Under direct action, if the insureds' negligent conduct caused the plaintiffs' damages, the plaintiffs can obtain a judgment directly against PIC for those damages. Kranzush, 103 Wis. 2d at 75.
¶ 133 The majority opinion spends no time explaining how Wis. Stat. § 632.24 sets the stage for PIC's liability, without proving or stipulating that the insureds were negligent and that their negligence caused plaintiffs' damages. The majority opinion's failure to apply the plain meaning of § 632.24 leads it to erroneously conclude that PIC is liable for the plaintiffs' damages, notwithstanding the conditions imposed on the insurer's liability under § 632.24 and the denials of fault in the answers of the insureds.
a. Statutory interpretation's general principles
¶ 134 "[S]tatutory interpretation `begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane County, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶43, 236 Wis. 2d 211, 612 N.W.2d 659). Plain meaning may be ascertained not only from the words employed in the statute, but also from statutory context. Id., ¶46. We do not interpret statutory language in isolation, but rather, as that language appears in relation to surrounding or related statutes, and reasonably, to avoid absurd or unreasonable results. Id.
¶ 135 Context includes statutory history, i.e., the previous versions of the statute currently being examined. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶22, __ Wis. 2d __, 749 N.W.2d 581 (citing Kalal, 271 Wis. 2d 633, ¶69). "Statutory history encompasses the previously enacted and repealed provisions of a statute." Id. By analyzing the changes the legislature has made over the course of several years, we may more easily discern the meaning of a statute. Id. We also presume that the legislature meant an interpretation of the statute that will advance the statutory purpose. GTE N. Inc. v. Pub. Serv. Comm'n of Wis., 176 Wis. 2d 559, 566, 500 N.W.2d 284 (1993).
¶ 136 If a statute is "capable of being understood by reasonably well-informed persons in two or more senses[,]" then the statute is ambiguous, and we may consult extrinsic sources to comprehend its meaning. Kalal, 271 Wis. 2d 633, ¶¶47-48, 50. We have also consulted statutory history to confirm the plain meaning of a statute. Id., ¶51.
b. Wisconsin Stat. § 632.24
¶ 137 As with all statutory interpretation and application, I begin my discussion with the language of the statute. Here we review Wis. Stat. § 632.24, Wisconsin's current direct action statute. It provides:
Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.
(Emphasis added.) Section 632.24 does not make an insurer directly liable to all who choose to sue an insurance company. Rather, § 632.24 provides only conditional liability, wherein an insurer is liable to all who are entitled to recover against the insured for the insured's negligence. The condition imposed by the direct action statute is clear and unambiguous. Section 632.24 plainly means to impose liability on an insurer only if the claimant is "entitled to recover against the insured" for the insured's conduct that underlies the direct action against the insurer. Section 632.24 is not a strict liability statute. An examination of the statutory history supports my conclusion because it places the current statute in context and confirms the necessary connection between an insured's conduct and direct liability of the insurer.
¶ 138 A direct action statute providing injured parties with the right to directly sue insurance companies was first enacted in 1925 as Wis. Stat. § 85.25 (1925). At that time, direct action was part of the "Law of [the] Road" and applied only to motor vehicle accidents. It provided:
Accident insurance, liability of insurer. Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, caused by the negligent operation, maintenance, use or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy.
(Emphasis added.) Direct action was conditioned on the insured's negligent conduct being a cause of the claimant's damages.
¶ 139 Our decisions, which interpreted Wis. Stat. § 85.25 (1925) shortly after it was enacted, considered it in the context of the negligent operation of a motor vehicle. We did not construe the statutory right of direct action as superior to contractual provisions; but rather, we permitted contractual limitations on the timing of the right of direct action. That is, if a provision in an insurance policy precluded suit against the insurance company until the liability of its insured had been determined, we held that provision was dispositive. See, e.g., Morgan v. Hunt, 196 Wis. 298, 300, 220 N.W. 224 (1928) (concluding that § 85.25 (1925) "does not create a liability or confer any right of action where none exists under the terms of the policy itself"); see also Bro v. Standard Accident Ins. Co., 194 Wis. 293, 295-96, 215 N.W. 431 (1927) (concluding that § 85.25 (1925) "does not give the plaintiff a right of action against the insurance company . . . where none exists under the terms of the policy itself").
¶ 140 Wisconsin Stat. § 85.25 (1925) was amended and re-numbered as Wis. Stat. § 85.93 in 1929. The amendment clarified that a litigant had a right of direct action against an insurer before, as well as after, the insured's conduct was determined to be negligent and a cause of plaintiff's damages. The legislature did so by adding the phrase, "irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured" to the direct action statute. Frye v. Angst, 28 Wis. 2d 575, 578, 137 N.W.2d 430 (1965). In 1929, the legislature also limited the amount that could be recovered from an insurance company to the policy's limits. Section 85.93 (1929) provided:
Accident insurance, liability of insurer. Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured, when caused by the negligent operation, maintenance, use or defective construction of the vehicle described therein, such liability is not to exceed the amount named in said bond or policy.
(Emphasis added.) The amendments did not change the condition that direct action continued to impose on the potential liability of insurance carriers, i.e., that the insured's negligent conduct was a cause of the claimant's damages. Section 85.93 (1929) remained unchanged until 1957, when it was renumbered as Wis. Stat. § 204.30(4).
¶ 141 Decisions that interpreted the 1957 version of the direct action statute explained the statutory changes up to that point in time. For example, in Frye, we explained that in 1929 the statute was amended to provide that direct action was permitted even before the liability of the insured had been determined, thereby abrogating Morgan and Bro.[79] Frye, 28 Wis. 2d at 579. We also explained that direct action set out in Wis. Stat. § 204.30(4) (1957) was a substantive right, but that Wis. Stat. § 260.11(1) (1957) was a necessary procedural component of direct action that determined whether a given insurer could be subject to direct action in the first instance. Id.
¶ 142 Our discussion in Frye drew together what we believed the legislature meant to enact by comparing legislative amendments of direct action statutes with contemporaneous court decisions. However, in Frye, we also held that "'[m]aintenance' of an automobile has never been considered a part of operation, or of management and control," id. at 582, and accordingly, a claim for negligent maintenance did not meet the necessary procedural parameters set out in Wis. Stat. § 260.11(1) (1957) to permit a direct action, id. at 583.
¶ 143 Apparently, we were not quite on target with the legislature with regard to that conclusion in Frye because in 1967, the legislature again amended the direct action statute. It added, "[when] caused by the negligent operation, management, control, maintenance, use or defective construction of a motor vehicle" (emphasis added) to Wis. Stat. § 260.11(1) (1967), thereby making the procedural and substantive provisions of direct action coextensive in regard to the conduct each covered.
¶ 144 In 1971, the legislature made significant revisions to Wis. Stat. § 204.30(4) wherein it removed the references to "motor vehicle" and substituted "negligence," thereby broadening the scope of direct action to impose the potential for liability on insurance carriers to "those entitled to recover" for injuries or death caused by "negligence," whether a motor vehicle was involved or not. The 1971 version of the direct action statute, § 204.30(4), provided:
Liability of insurer. Any bond or policy of insurance covering liability to others by reason of negligence shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured, when caused by negligence, such liability not to exceed the amount named in said bond or policy. The right of direct action herein given against an insurer shall exist whether or not the policy or contract of insurance contains a provision forbidding such direct action.
(Emphasis added.) The amendments did not change the condition that direct action continued to impose on the potential liability of insurance carriers: that the insured's negligent conduct was a cause of the claimant's damages.
¶ 145 In 1975, Wis. Stat. § 204.30(4) was repealed and the substantive provision of direct action was recreated as Wis. Stat. § 632.24 (1975). It provided:
Direct action against insurer. Any bond or policy of insurance covering liability to others for negligence makes the insurer liable, up to the amounts stated in the bond or policy, to the persons entitled to recover against the insured for the death of any person or for injury to persons or property, irrespective of whether the liability is presently established or is contingent and to become fixed or certain by final judgment against the insured.
(Emphasis added.) The amendments did not change the condition that direct action continued to impose on the potential liability of insurance carriers: that the insured's negligent conduct was a cause of the claimant's damages.
¶ 146 In Kranzush, we examined Wis. Stat. § 632.24 (1975) in light of a claimed bad faith refusal to settle made by the injured party. Kranzush, 103 Wis. 2d at 57. We began by noting that § 632.24 does not create strict liability for the insurance companies subject to its provisions. Id. at 66. We explained, "it is obvious that these statutes fall far short of creating the no-fault compensatory scheme embodied in the worker's compensation statutes. . . . The claimant is not locked into a legislatively driven bargain whereby his recovery, though smaller, is not contingent upon his success in a lawsuit." Id. at 66-67.
¶ 147 In parsing Wis. Stat. § 632.24 (1975), we said that "an insurer [is] liable up to policy limits to `the persons entitled to recover against the insured.'" Id. at 75 (emphasis added).[80] Of significance to the case now before us, we also explained in Kranzush that "it is clear from the language of the statute that the liability to which the insurer is exposed is predicated upon the liability of the insured." Id. We explained further, "[u]nder this section the claimant has a right of action against the insurer only to the extent that he has the same right of action against the insured for his negligence." Id.
¶ 148 Wisconsin law holding that the substantive liability of an insurer under Wisconsin's direct action statute is predicated on the insured's conduct being negligent and a cause of the claimant's damages has been settled for more than 60 years. For example, in Kujawa v. American Indemnity Co., 245 Wis. 361, 14 N.W.2d 31 (1944), we reviewed the direct action statute then in place, Wis. Stat. § 85.93 (1929), in light of a direct action against the insurer where the insured was not joined in the action. Id. at 363. The action against American Indemnity was commenced before the statute of limitations had run on the claim against the insured; however, before the action against American Indemnity was concluded, the statute of limitations ran on claims against the insured. Id. at 362. American Indemnity moved to dismiss. Id. We explained that since its enactment, the direct action statute "makes the insurance company directly liable `to the persons entitled to recover for the death of any person, or for injury to person or property, caused by the negligent operation . . . irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured." Id. at 363. We reasoned that, because the statute of limitations had not run against Kujawa's claim against the insured when the action against American Indemnity was commenced, the statute of limitations did not preclude continuation of that action. See id. at 366.
¶ 149 In interpreting the direct action statutes in Kujawa, we explained that "[i]t is quite impossible to read into the statutes [secs. 85.93 and 260.11] an intent to create a liability on the part of the insurance carrier completely dissociated from the liability of the insured." Id. at 365 (emphasis added).[81] We said, "[t]here is nothing in it to negative the idea that the insurer is not liable unless the assured is, or that any defense under the policy that relieves the insurer from liability as against the assured also relieves it from liability as against injured persons. As to the statute, it does not create liability against the insurer." Id. at 365 (emphasis added). Accordingly, we concluded that negligent conduct by an insured was a necessary component to maintaining a direct action against an insurer. Id. at 366.
¶ 150 In Wiechmann v. Huber, 211 Wis. 333, 248 N.W. 112 (1933), we also examined whether a lawsuit against an insurer would lie under the direct action statute when the lawsuit had not been commenced before the plaintiff's claim against the insured had abated. The plaintiff argued that because Wis. Stat. § 85.93 (1929) gave it a right of direct action against the insurer, the fact that the plaintiff could no longer maintain an action against the insured was not dispositive. Id. at 335. We disagreed. Id. at 336. In concluding that no action could be brought against the insurer after the claim against the insured had expired, we explained, "It is quite impossible to read into the statutes an intent to create a liability on the part of the insurance carrier completely dissociated from the liability of the insured." Id. at 336.
¶ 151 In Tierney v. Lacenski, 114 Wis. 2d 298, 338 N.W.2d 320 (Ct. App. 1983), the court of appeals was asked to decide whether a direct action against the insurer would lie under Wis. Stat. § 632.24 (1975) when the plaintiff did not serve a statutorily required notice of claim. Plaintiff's failure precluded any action against the insured. Id. at 303-04. In concluding that no direct action could be maintained against the insurer, we said:
Even under the direct action statute, sec. 632.24, Stats., which makes an insurer liable up to the policy limits to "the persons entitled to recover against the insured for the death of any person or for injury to the person or property," it is clear from the statutory language that the liability to which the insurer is exposed is predicated upon the insured's liability. Under this section, the claimant has a right of action against the insurer only to the extent that he has the same right of action against the insured for his negligence.
Id. at 303-04 (citation omitted).
¶ 152 My review of the statutory history of Wis. Stat. § 632.24 and the cases that have construed the changing form of Wisconsin's direct action statutes uncovers a consistent theme: liability of an insurer sued under direct action is tied to and conditioned on a finding that the insured's negligent conduct was a cause of the plaintiff's damages. This is so because from the beginning of direct action, the direct action statutes have conditioned the liability of an insurer, i.e., direct action "makes an insurer liable" only to "persons entitled to recover against the insured." Kranzush, 103 Wis. 2d at 75; see also Kujawa, 245 Wis. at 364; Wiechmann, 211 Wis. at 336; Biggart v. Barstad, 182 Wis. 2d 421, 428, 513 N.W.2d 681 (Ct. App. 1994); Tierney, 114 Wis. 2d at 304-05.
¶ 153 This conclusion is also consistent with the purposes of the direct action statute, wherein recovery is conditioned on the nature of the conduct of the insured. Those purposes are:
[to] save litigation and reduce the expense by determining the rights of all parties in a single action which is usually defended by the insurance carrier. [To] expedite the final settlement of litigation and the final payment to the injured person, if he be entitled to recovery. [To] place the burden upon the insurance carrier who has been compensated in advance for its liability to pay the damage assessed for such injuries to person and damage to property as have been caused by actionable negligence on the part of the person insured.
Decade's Monthly Income & Appreciation Fund v. Whyte & Hirschboeck, S.C., 173 Wis. 2d 665, 675, 495 N.W.2d 335 (1993) (quoting Ducommun v. Inter-State Exchange, 193 Wis. 179, 185, 212 N.W. 289 (1927)).
¶ 154 The majority opinion recognizes that the liability of the insurer is tied to the conduct of the insured, as evidenced by its statement:
An insurer's liability is, of course, dependent upon the conduct of its insured, but the insurer's liability is not necessarily dependent on the insured's liability. There can be no recovery against the insurer unless the insured's conduct giving rise to liability is proven.[82]
I agree completely with those statements of the law. However, no sooner has the majority correctly stated the law, when in the same discussion, it ignores the conduct of the insureds and concludes that, notwithstanding that the insureds' conduct has not been proven to be negligent or a cause of plaintiffs' damages, PIC is liable.[83]
¶ 155 To reach its result, the majority opinion relies heavily on its reconstruction of our decision in Loy v. Bunderson, 107 Wis. 2d 400, 320 N.W.2d 175 (1982).[84] The majority opinion applies Loy selectively, taking various statements from it and implying that those statements support its conclusion that PIC is liable without proving that the insureds were negligent and that their negligence was a cause of the plaintiffs' damages.[85] However, read in its entirety, Loy supports this dissent's conclusion that PIC cannot be liable to the plaintiffs until the plaintiffs prove that the insureds' conduct was negligent and a cause of the plaintiffs' damages.
¶ 156 Loy involved the question of whether a "special release" of General Casualty and its insured, Truesdill, was valid when it left Travelers Insurance subject to suit. Id. at 401-02. Under the terms of the release, General Casualty paid $20,000 upon a $50,000 policy for its release. Id. at 402. Travelers remained subject to suit on its $500,000 policy for amounts between $ 50,000 and $500,000, as did Truesdill.[86] Id. at 402, 405. Under the release, Travelers continued to have a duty to defend Truesdill against the claim that his negligence caused the plaintiff's damages. Id. at 403.
¶ 157 In parsing the direct action statute, Wis. Stat. § 632.24 (1975), we explained that "[t]he insurance company has a direct liability to an injured party if other factors trigger insurance company liability." Id. at 421 (emphasis added). We further explained that "it is the nature of the insured's conduct and its consequences with which an insurance company is concerned." Id. at 422. In expressing the necessary nexus between the insured's conduct and the insurer's direct liability to the injured party, we quoted Nichols v. United States Fidelity & Guaranty Co., 13 Wis. 2d 491, 109 N.W.2d 131 (1961):
The fact that a third party can sue an insurer of a motor vehicle direct . . . without first recovering a judgment against the insured defendant, does not enlarge the coverage afforded by such policy or determine the insurer's liability thereunder.
Loy, 107 Wis. 2d at 422 (quoting Nichols, 13 Wis. 2d at 499). We summed up our conclusions about the relationship between the insured's conduct and the potential for liability of the insurer under the direct action statute as follows:
An insurer is directly liable to the plaintiff if the underlying conditions of negligence are satisfied although, after commencement of the action, the insured is released or protected by an absolute covenant not to sue. The responsibility of an insurance company to an injured party is derivative of the insured's conduct, but it is not derivative of the status of the insured's personal liability to a plaintiff at the time the insurer's contractual obligations are triggered by a judgment for damages.
Id. at 426. Accordingly, the reasoning and conclusions in Loy reaffirm my conclusion that, notwithstanding the direct action statute, PIC cannot be held liable to the plaintiffs until the conduct of the insureds is proved to be negligent and a cause of plaintiffs' damages. In addition, requiring proof of those facts furthers a purpose of the direct action statute, i.e., requiring the insurer to pay damages "as have been caused by actionable negligence on the part of the person insured." Decade's Monthly Income, 173 Wis. 2d at 675 (quoting Ducommun, 193 Wis. at 185).
¶ 158 However, here, the majority opinion, for the first time in more than 60 years, detaches the conduct of the insured from the obligation of the insurer. None of the purposes of the direct action statute is furthered by this interpretation of Wis. Stat. § 632.24. See id. The majority opinion accomplishes this coup de grace by asserting, without any cited authority, "A necessary corollary of the insurer's direct liability to an injured complainant is that the insurer may admit an allegation of its liability, as well as the underlying allegation of the tortious conduct of its insured."[87] One can only wonder how this assertion plays out if an insurer were to admit that the insured's conduct was negligent and a cause of the claimant's damages, but also asserts that the policy has lapsed.
¶ 159 Furthermore, there are collateral consequences for members of certain professions who have been determined to have provided services in a negligent manner, thereby causing injury. Such an admission of negligence may result in consequences in addition to paying damages.[88] And finally, and of utmost importance in the case before us, the insureds have denied that they negligently provided medical care to Dale Otto and that their care was a cause of plaintiffs' damages. Therefore, even if one were to accept the bold assertion of the majority opinion, which I do not, it has no application here.
¶ 160 The majority also relies on PIC's obligation under Wis. Stat. § 802.02(4) to answer the amended complaint.[89] I have no quarrel with the assertion that PIC must answer the amended complaint. However, its failure to timely answer does not negate the answers that the insureds made in regard to their own conduct. An example will show the fallacy of the majority's reliance on § 802.02(4) for its assertion that PIC's failure to timely answer admitted the negligence of the insureds who had denied that their conduct was negligent.
¶ 161 Suppose that three doctors and one nurse were sued for their treatment of a patient who dies subsequent to surgery. All the doctors answer and deny negligence, but the nurse does not answer. Does the nurse's default admit the doctors' negligence? Of course, it does not. Is the nurse liable for all of the damages that the patient suffered even though she provided only post-operative care? Of course, she is not. The nurse is not subject to direct action liability.
¶ 162 Accordingly, the only way that PIC can be liable here is if the direct action statute permits the separation of the insured's conduct from the insurer's liability. However, we have held for more than 60 years that it does not do so. Kujawa, 245 Wis. at 364; Wiechmann, 211 Wis. at 336.
¶ 163 The majority opinion also relies on Martin v. Griffin, 117 Wis. 2d 438, 344 N.W.2d 206 (Ct. App. 1984), in its efforts to justify its overruling 60 years of precedent that uniformly has held that under the direct action statute, the insurer's liability is tied to the insured's conduct.[90] Martin is of no assistance because the court of appeals did not address the issue upon which the case now before us turns.
¶ 164 In Martin, the court of appeals examined the failure of Milbank Mutual to file a timely answer when it was sued under the direct action statute for Griffin's alleged negligence in operating a motor vehicle. Id. at 440. It began by noting that whether to grant a default judgment is a discretionary determination of the circuit court. Id. at 442. It then examined the circuit court's reasoning and concluded that the circuit court "did not abuse its discretion by granting Martin a default judgment." Id. at 444. In speaking to the issue of liability, the court said, "By failing to file a timely answer of denial, Milbank has admitted the unconditioned allegation that its policy covered Griffin for liability for damages caused by his negligence." Id. However, the court of appeals did not address the question of whether Milbank's default resulted in an admission that Griffin was negligent. It simply assumed that once Milbank defaulted, it was responsible for Griffin's negligence because negligence had been alleged. Id.
¶ 165 The majority opinion asserts that the court of appeals' conclusion in Martin should control the outcome of this case.[91] To some extent, there are parallels in the facts between the two cases, and PIC does not deny that its default resulted in a conclusive finding that it is liable for the damages caused by the negligence of its insureds. However, beyond that conclusion, the holdings in Martin do not address the critical question here. That is, whether PIC's failure to answer admitted that the insureds negligently provided medical care to Dale Otto and whether that negligence was a cause of plaintiffs' damages, even though the insureds denied those allegations and their denials have not been stricken.
¶ 166 In its effort to impose strict liability on PIC, the majority opinion seeks to enlist the default judgment statute, Wis. Stat. § 806.02. The majority opinion asserts that in regard to default judgments, "[t]he ordinary rule is that the allegations in a complaint `are admitted when not denied' in the answer of a defendant against whom the allegations are made."[92] I do not disagree with that statement, but it does not support holding PIC liable to the plaintiffs. There was no allegation that PIC provided negligent medical care. That was alleged against the insureds. By contrast, it was alleged that PIC,
had in full force and effect, at all material times, a policy of insurance covering Dr. Folkestad, Dr. Witt, and Red Cedar Clinic for the alleged negligence which is the subject of this complaint, and is therefore directly liable to the plaintiffs for the below enumerated damages."[93]
I agree that, if the insureds were proved to have negligently provided medical care to Dale Otto that was a cause of the plaintiffs' harm, then PIC's default admits that it provided coverage for that conduct. However, there is nothing in the default judgment statute that permits a court to assert the claimed liability of a defendant against another defendant when claims of jointly negligent conduct have not been made.
¶ 167 Holding one defendant liable for more conduct than is alleged against him in a complaint serves no rational purpose, as we held long ago. In Pett v. Clark, 5 Wis. 198 (1856), we concluded that it was error to enter default judgment against two defendants after one of the two defendants had answered, without first striking that answer. Id. at 198-99. Here, the insureds' answer has not been stricken, nor has any basis to strike their answer been asserted.
¶ 168 In Haugen v. Wittkopf, 242 Wis. 276, 7 N.W.2d 886 (1943), we examined the pleading relationship between an insured and the insurer. In Haugen, an insurer did not raise the defense of assumption of risk, but its insured did. Id. at 281. We concluded that even though "the answer of the insurer did not so assert that defense, its liability is to indemnify the host, and as the host is not liable the insurer is not and there can be no recovery against it." Id. at 281. Haugen fits well with the circumstances before us because all of the insureds denied that they negligently provided medical care to Dale Otto causing the plaintiffs' damages. Therefore, the conduct that is necessary to prove before there can be direct liability against PIC under Wis. Stat. § 632.24 remains unproven.
¶ 169 Other jurisdictions also have examined the effect of a default by one defendant on the liability of another defendant. For example, in Fred Chenoweth Equipment Co. v. Oculus Corp., 328 S.E.2d 539 (Ga. 1985), the Supreme Court of Georgia examined the effect of a default by a defendant, Oculus, who was alleged to owe Chenoweth for materials and equipment, on the liability of Oculus's surety. Id. at 540. In determining that the surety was not liable based on Oculus's default, the court reasoned that there were actually two causes of action presented by the pleadings. The cause of action against Oculus was based on breach of contract for failing to pay, and the cause of action against the surety was an action on the bond of the surety. Id. at 540-41. Therefore, the court concluded that liability of the two defendants was not joint. Id. at 541. It also concluded that the default judgment against Oculus did not reach the merits of the breach of contract claim against it. Id. However, in order to recover on the bond, the court noted that the merits of the claim against the insured would have to be addressed before the surety could be liable for payment. Id.
¶ 170 Here too, there are two claims for relief: one for medical malpractice and one on a contract to provide insurance for medical malpractice. However, the merits of the plaintiffs' claims against the insureds must be litigated before their direct action will meet the necessary conditions for direct liability under Wis. Stat. § 632.24. PIC and its insureds are not joint tortfeasors.
¶ 171 Accordingly, the majority opinion has provided no rationale for ignoring 60 years of precedent which has made direct action liability conditioned upon the conduct of the insured. As Justice Thomas Fairchild said in Wiechmann, "It is quite impossible to read into the statutes an intent to create a liability on the part of the insurance carrier completely dissociated from the liability of the insured." Wiechmann, 211 Wis. at 336. However, after more 60 years, the majority opinion chooses to do so.

III. CONCLUSION
¶ 172 The majority opinion affirms the court of appeals' conclusion that PIC's failure to answer within the statutorily prescribed time results in the following conclusive factual findings: (1) PIC's insureds were negligent; and (2) PIC's insureds' negligence was causal of plaintiffs' damages. PIC's insureds, in their answer to the amended complaint, denied that their conduct was negligent and denied that their conduct caused plaintiffs' damages, which denials joined those issues of fact and have not been stricken or proven false. Under the direct action statute, Wis. Stat. § 632.24, PIC cannot be liable unless its insureds' conduct was negligent and a cause of plaintiffs' damages. Kranzush, 103 Wis. 2d at 75. Therefore, the matter should be returned to the circuit court to litigate the contested factual questions relating to PIC's insureds' conduct.[94] Because the majority opinion disconnects PIC's liability from the insureds' conduct, contrary to the legislative directive, I respectfully dissent.
¶ 173 I am authorized to state that Justices DAVID T. PROSSER and ANNETTE KINGSLAND ZIEGLER join this dissent.
NOTES
[1] Estate of Otto v. Physicians Ins. Co. of Wis., Inc., 2007 WI App 192, 305 Wis. 2d 198, 738 N.W.2d 599.

The court of appeals agreed with PIC that the circuit court erred in failing to offset the damage award against PIC by the amount that a subrogated insurer had already paid to the plaintiff. The court of appeals thus reversed the circuit court on this issue and remanded cause with directions for the clerk of courts to adjust the judgment against PIC to account for the offset of $46,635.26. See Estate of Otto, 305 Wis. 2d 198, ¶¶28-32. In all other respects, the court of appeals affirmed the circuit court's judgment.
The plaintiff declined to petition for review of that portion of the court of appeals' opinion reversing the circuit court's judgment in part.
[2] PIC argued to the circuit court that PIC's neglect was of the kind "which might have been the act of a reasonably prudent person under the same circumstances." See Connor v. Connor, 2001 WI 49, ¶16, 243 Wis. 2d 279, 627 N.W.2d 182 (quotation marks and citation omitted).
[3] The record shows that either counsel for the codefendants or his cocounsel filed 12 formal documents with the circuit court during the relevant period. Each document listed PIC's codefendants, but not PIC, as being represented by counsel's firm.
[4] The transcript of the April 20, 2004, hearing is not in the record. However, the transcript of the July 13, 2004, hearing is. At the beginning of the July 13 hearing, cocounsel for the defendants identified herself as follows:

Lori Lubinsky of the Axley Brynelson firm appearing on behalf of the defendants, Charles Folkestad, Terrence Witt, Red Cedar Clinic and the Fund to the extent we provided a defense for the Fund.
As the circuit court found, counsel's recitation of the clients she appeared to represent did not include PIC.
[5] In its petition, PIC explicitly addressed its decision not to petition for review of the additional issues that PIC raised and argued before the lower courts. PIC's petition explains that although PIC "disagrees with the lower courts' ruling on all of the default issues," PIC opted to focus its petition "on the key issue of first impression in Wisconsin pertaining to the effect of the default." Petition for Review by Defendant-Appellant Physicians Insurance Company of Wisconsin, Inc. at 6.

At oral argument, members of this court also pressed PIC's appellate counsel for a statement of the issue or issues that PIC intended to argue before this court. Counsel for PIC confirmed that among the many issues PIC raised and argued before the lower courts, PIC had declined to present all but one "narrow" issue for review by this court.
[6] The following is PIC's statement of the issue in its Petition for Review and in its Opening Brief in this court:

Is it appropriate to impose an almost $1 million default judgment on a late answering insurer for all of the damages caused by its insured where the insuredswhose conduct is the issue in the casetimely and vigorously disputed all of the Plaintiffs' liability and damage allegations through the defense counsel the insurer retained to provide a joint defense for it and its insureds? The trial court ruled that the effect of the insurer's default was to preclude it from challenging whether its insureds were negligent even though the insureds timely denied all of Plaintiffs' allegations and imposed a $972,469.81 default judgment against the insurer.
[7] The complaint also named a subrogated defendant.
[8] In addition, the amended complaint named a second subrogated defendant in the action.
[9] As stated in the amended summons, the time allotted to PIC to answer was 45 days. See Wis. Stat. § (Rule) 802.09(1) (2003-04) ("A party shall plead in response to an amended pleading within 45 days after service of the amended pleading.").

All subsequent references to the Wisconsin Statutes are to the 2003-04 version unless otherwise indicated.
[10] See Wis. Stat. § (Rule) 801.15(2)(a) (providing in relevant part that if a motion for enlargement of the time in which to perform an act "is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect").
[11] See Hedtcke v. Sentry Ins. Co., 109 Wis. 2d 461, 478 n. 5, 326 N.W.2d 727 (1982) ("Upon entry of a default judgment, the circuit court may hold a hearing or inquiry to determine damages.").
[12] Split Rock Hardwoods, Inc. v. Lumber Liquidators, Inc., 2002 WI 66, ¶63, 253 Wis. 2d 238, 646 N.W.2d 19.
[13] Kocken v. Wis. Council 40, 2007 WI 72, ¶26, 301 Wis. 2d 266, 732 N.W.2d 828.
[14] Waters ex rel. Skow v. Pertzborn, 2001 WI 62, ¶16, 243 Wis. 2d 703, 627 N.W.2d 497.
[15] Loy v. Bunderson, 107 Wis. 2d 400, 423, 320 N.W.2d 175 (1982).
[16] Id. at 423.
[17] Id. at 421.
[18] Opening Brief and Appendix of Defendant-Appellant-Petitioner Physicians Insurance Company of Wisconsin, Inc. at 11.
[19] Loy, 107 Wis. 2d at 426 (emphasis added).
[20] Id. at 421.
[21] We have stated that the direct action statute embodies the following three legislative purposes: (1) to "save litigation and reduce the expense by determining the rights of all parties in a single action which is usually defended by the insurance carrier"; (2) to "expedite the final settlement of litigation and the final payment to the injured person, if he be entitled to recovery"; and (3) to "place the burden upon the insurance carrier who has been compensated in advance for its liability to pay the damage assessed for such injuries to person and damage to property as have been caused by actionable negligence on the part of the person insured." Decade's Monthly Income & Appreciation Fund v. Whyte & Hirschboeck, S.C., 173 Wis. 2d 665, 675, 295 N.W.2d 335 (1993) (quoting Ducommun v. Inter-State Exchange, 193 Wis. 179, 185, 212 N.W. 289, reh'g denied, 193 Wis. 185, 214 N.W. 616 (1927)).
[22] Kujawa v. Am. Indem. Co., 245 Wis. 361, 363, 14 N.W.2d 31 (1944).
[23] Id.
[24] Id. at 366.
[25] Wis. Stat. § (Rule) 802.02(4)
[26] 3A Jay E. Grenig, Wisconsin Practice Series: Civil Procedure § 602.3, at 171 (3d ed. 2003).
[27] See 3A Grenig, supra note 26, § 602.3, at 171 ("If the court determines the defendant is in default, the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (citing Charles Alan Wright et al., Federal Practice and Procedure: Civil 2d § 2688 (1998) pertaining to Rule 55 of the Federal Rules of Civil Procedure).
[28] See Wis. Stat. § (Rule) 802.06(1) ("[A] defendant shall serve an answer within [specifying times]. . . .") (emphasis added); § (Rule) 802.09(1) ("A party shall plead in response to an amended pleading within [specifying times] . . .") (emphasis added).
[29] Split Rock Hardwoods, 253 Wis. 2d 238, ¶29.
[30] Indeed, it is not clear that a deemed admission of unconditional coverage would be of any consequence to PIC in the present case. In its untimely answer, PIC admitted that it "had at a time material hereto a policy of insurance in full force and effect which provided coverage to [the codefendant insureds] for claims of the nature alleged by plaintiffs." PIC did attempt to plead "the terms and conditions of said policy" as a limitation on its coverage obligations, but it is not clear from the record that PIC could have expected the terms and conditions of its policy to make any practical difference. PIC's contract with its codefendant insureds is not in the record.
[31] Martin v. Griffin, 117 Wis. 2d 438, 440-41, 344 N.W.2d 206 (Ct. App. 1984)
[32] See Martin, 117 Wis. 2d at 441; Brief of Milbank Mutual to the Court of Appeals at 1-2.
[33] Martin, 117 Wis. 2d at 441.
[34] Id.
[35] Id. at 443.
[36] Reply Brief of Defendant-Appellant-Petitioner Physicians Insurance Company of Wisconsin, Inc. at 8 n. 4.
[37] Opening Brief and Appendix of Defendant-Appellant-Petitioner Physicians Insurance Company of Wisconsin, Inc. at 20-21.
[38] Id. at 21.
[39] Martin, 117 Wis. 2d at 441.
[40] Brief of Milbank Mutual Insurance Company to the Court of Appeals at 1-2.
[41] Id. at 1.
[42] Martin, 117 Wis. 2d at 440.
[43] Id. at 444.
[44] Id. (emphasis added).
[45] Brief of American Star Insurance Company to the Court of Appeals at 5 ("Reid Boiler Works appeared by counsel and answered the Complaint denying all of the Complaint's allegations except the allegations of Reid's existence. . . . ").
[46] Pett v. Clark, 5 Wis. 198, 199 (1856) (emphasis added).
[47] Leonard v. Cattahach, 214 Wis. 2d 236, 241, 571 N.W.2d 444 (Ct. App. 1997).
[48] Id. at 251.
[49] Id. (citation omitted).
[50] Id. at 251 n. 7.
[51] Haugen v. Wittkopf, 242 Wis. 276, 277, 7 N.W.2d 886 (1943).
[52] Id.
[53] 46 Am. Jur. 2d Judgments § 252 (2007).
[54] Rothman v. Hebebrand, 720 So. 2d 595, 596 (Fla. Dist. Ct. App. 1998).
[55] See Days Inns Acquisition Corp. v. Hutchinson, 707 So. 2d 747, 751 (Fla. Dist. Ct. App. 1997):

We reject [a rule] that would require a trial court to defer entry of a default judgment in all cases where there are non-defaulting co-defendants. We likewise reject a per se rule that a plaintiff is always entitled to a default judgment against a defaulting defendant prior to the adjudication of the merits against non-defaulting co-defendants. . . . Where . . . relief against one defendant is completely dependent upon the liability of a co-defendant, it would be improper to allow the final judgment to be entered until the liability of the co-defendant has been decided.
[56] See id. at 751-52 & n. 6.
[57] See Opening Brief and Appendix of Defendant-Appellant-Petitioner Physicians Insurance Company of Wisconsin, Inc. at 3, 36.
[58] Sutter v. Payne, 989 S.W.2d 887, 889 (Ark. 1999).
[59] Id.
[60] See, e.g., Blea v. Sandoval, 761 P.2d 432, 437 (N.M. Ct. App. 1988) ("Plaintiffs should not have been allowed to obtain a default judgment against defendant, whose ownership and possessory interests were equal to those of his wife, who successfully defended against the quiet title action. . . . [The wife's] successful defense against that action inured to defendant's benefit.") (emphasis added); Kooper v. King, 15 Cal. Rptr. 848, 852 (Cal. App. 1961) ("Where there are two or more defendants and the defenses interposed by an answering defendant go to the whole right of the plaintiff to recover at all, as distinguished from his right to recover as against any particular defendant . . . [And] when such defenses prove successful they enure to the benefit of the defaulting defendant, and final judgment must therefore be entered not only in favor of the answering defendant, but in favor of the defaulting defendant as well." (emphasis added; quotation marks and citations omitted); Bronn v. Soules, 13 P.2d 623, 623 (Or. 1932) ("[I]n actions against several defendants jointly, where the defense interposed by the answering defendant is not personal to himself . . . but common to all, as where it goes to the whole right of the plaintiff to recover at all, as distinguished from his right to recover as against any particular defendant, or questions the merits or validity of the plaintiff's entire cause of action in general, or his right to sue, such defense, if successful, inures to the benefit of the defaulting defendants both in actions at law and suits in equity, with the result that final judgment must be entered not merely in favor of the answering defendant, but also in favor of the defaulting defendants.") (quotation marks and citation omitted; emphasis added).
[61] See, e.g., Paul v. Pool, 605 P.2d 635, 637 (Nev. 1980) ("It was . . . error for the district court to enter a default against appellant, hear ex parte evidence and enter judgment.").
[62] Frow v. De La Vega, 82 U.S. 552, 554 (1872).
[63] Id.
[64] Courts appear to disagree about the scope of Frow's application. Some courts have limited Frow to its facts and refused to apply Frow to cases in which the alleged liability is both joint and several. See, e.g., Westinghouse Elec. Corp. v. Rio Algom Ltd., 617 F.2d 1248, 1258 (7th Cir. 1980) ("To the extent that [Frow] holds that there cannot be inconsistent adjudications as to joint liability or as to a single res in controversy this ancient equity case remains good law. But to apply Frow to a claim of joint and several liability is to apply that venerable case to a context for which it was never intended. . . .") (footnotes omitted). Other courts have suggested that Frow's application may be limited to situations in which the nature of the relief demanded makes it impossible to grant relief against one defendant without also granting relief against others. See, e.g., Carter v. District of Columbia, 795 F.2d 116, 137 (D.C. Cir. 1986) ("The holding in Frow did not `rest solely on the fact that the liability alleged was joint'; more importantly, Frow responded to the reality that `[u]nder plaintiff's demand for relief, it was necessary that judgment be entered against all of the defendants in order to be effective.'") (footnotes omitted). At the same time, a leading treatise states that the Frow rule applies in cases where the alleged liability is both joint and several and that the rule likely may be extended even further in its scope. See 10A Charles Alan Wright et al., Federal Practice and Procedure § 2690 (1998) ("[T]he rule developed in the Frow case applies when the liability is joint and several [but] probably can be extended to situations in which several defendants have closely related defenses."). For another view of Frow, see 10 James Wm. Moore et al., Moore's Federal Practice § 55.36[2, at 55-67 to 55-70 (3d ed. rev. 2007).
[65] See Opening Brief and Appendix of Defendant-Appellant-Petitioner Physicians Insurance Company of Wisconsin, Inc. at 30-33.
[66] Loy, 107 Wis. 2d at 421.
[67] Frow, 82 U.S. at 552 (emphasis added).
[68] See Days Inns Acquisition Corp., 707 So. 2d at 749-51.
[69] Split Rock Hardwoods, 253 Wis. 2d 238, ¶63.
[70] Hedtcke v. Sentry Ins. Co., 109 Wis. 2d 461, 468, 326 N.W.2d 727 (1982) (citations omitted).
[71] The Hedtcke court stated that in considering whether the interests of justice would be served by an enlargement of time, "the circuit court should . . . be aware of the party's and society's interest in prompt adjudication and the probability that a [public] policy which excused or tolerated a lawyer's neglect would foster delay in litigation and lower the quality of legal representation." Hedtcke, 109 Wis. 2d at 469 (quotation marks omitted).

At the same time, the Hedtcke court also recognized that the circuit court "must be cognizant that denial of a motion for enlargement of time to answer may result in a default judgment in favor of the plaintiff" and that "[t]he law views default judgments with disfavor and prefers, whenever reasonably possible, to afford litigants a day in court and a trial on the issues." Hedtcke, 109 Wis. 2d at 469 (quotation marks and citation omitted).
[72] Hedtcke, 109 Wis. 2d at 468. See also Wis. Stat. § (Rule) 801.15(2)(a) (providing in relevant part that if a motion for enlargement of the time in which to perform an act "is made after the expiration of the specified time, it shall not be granted unless the court finds that the failure to act was the result of excusable neglect.") (emphasis added).
[73] This latter argument is made, however, in a third party brief filed with this court by the Wisconsin Insurance Alliance and the Property Casualty Insurers Association of America. The third party brief contends that a circuit court is required to consider the interests of justice prior to granting a motion for judgment by default. See Non-Party Brief of the Wisconsin Insurance Alliance and the Property Casualty Insurers Association of America at 9.
[74] Majority op., ¶¶43, 55.
[75] All further references to the Wisconsin Statutes are to the 2005-06 version, unless otherwise noted.
[76] Although the circuit court's decision to grant default judgment against PIC under the circumstances of this case is very troubling to me, that issue was not brought to us for review.
[77] In ¶6 of its Amended Answer, PIC averred "that the extent of coverage . . . [was] limited by the terms and conditions of [its] policy." However, the actual policy is not part of the record before us.
[78] Majority op., ¶31.
[79] The notes by Howard Ohm, Chief, Legislative Reference Library, reflect that the purpose of the amendment was to change the interpretation of Bro v. Standard Accident Insurance Co., 194 Wis. 293, 215 N.W. 431 (1927) and Morgan v. Hunt, 196 Wis. 298, 220 N.W. 224 (1928). Those cases had concluded that clauses in insurance policies may prevent a direct action against the insurance carrier until the liability of the insured has been determined.
[80] This condition on the insurer's liability, i.e., it rests upon the claimant having a right to recover against the insurer for the insured's conduct, has been in the direct action statute since 1925 when it was first enacted. See Wis. Stat. § 85.23 (1925).
[81] Ignoring the strong language in Kujawa v. American Indemnity Co., 245 Wis. 361, 14 N.W.2d 31 (1944), that absolutely connects the conduct of the insured to the question of whether the insurer is liable to the claimant under the direct action statute, the majority opinion tries to show that Kujawa supports its position of disconnecting the insured's conduct from liability for the insurer. See majority op., ¶¶37-39. It does so by saying that "under certain circumstances" the insurer may be liable even when the insured is not. Majority op., ¶36. However, whether the insurer may be liable when the insured is not is not the question presented by this lawsuit. The question here is whether the insurer may be liable without proving that the insured's conduct was negligent and a cause of the plaintiffs' damages.
[82] Majority op., ¶35 (emphasis in majority opinion).
[83] Majority op., ¶55.
[84] Majority op., ¶36.
[85] The majority opinion quotes Loy v. Bunderson, 107 Wis. 2d 400, 320 N.W.2d 175 (1982), as saying that "'responsibility of an insurance company to an injured party is derivative of the insured's conduct, . . . it is not derivative of the status of the insured's personal liability to a plaintiff,'" majority op., ¶36, and "'upon the insurer irrespective of whether there is a final judgment against the insured,'" id. Those quotes are absolutely correct, but they do not support the conclusion that PIC can be held liable when the insureds' conduct has not been proved to be negligent and causal of plaintiffs' injuries. The statute does not create strict liability for the insured. The statutory conditions tie liability of the insurer to the insured's conduct such that a claimant must be "entitled" to recover against the insured before liability can be imposed on the insurer.
[86] In the absence of the General Casualty policy, Travelers Insurance would have provided "dollar-one" coverage. Loy, 107 Wis. 2d at 404. Therefore, it benefited from the "special release."
[87] Majority op., ¶40.
[88] See, e.g., Wis. Stat. § 753.30(4) (requiring "[t]he clerk of circuit court [to] provide the medical examining board with a . . . copy of an order of a circuit court in which a physician . . . is found negligent in treating a patient.").
[89] Majority op., ¶¶41-43.
[90] Majority op., ¶¶60-73.
[91] Majority op., ¶67.
[92] Majority op., ¶42.
[93] Amended Complaint, ¶6.
[94] The majority questions how a remand to litigate questions about the insureds' conduct is possible because the insureds have been dismissed. Majority op., ¶97. However, that poses no problem in a direct action. Kujawa, 245 Wis. at 363.